### JOE WINFREY v. THE STATE.

#### No. 5260. Decided February 12, 1919.

**1.—Theft of Cattle—Charge of Court—Ownership—Requested Charge.**

Where, upon trial of theft of cattle, there was evidence that the alleged property either belonged to the defendant or one of his children, the court should have submitted a charge on this phase of the case and instructed the jury, if there was a reasonable doubt, to acquit the defendant, the language in the court's charge being too general, and the bill of exceptions which contained the requested charge, etc., was sufficient to raise the question.

**2.—Same—Oral Charge—Practice in District Court—Statutes Construed.**

The statute, articles 735 and 738, C. C. P., require that the court's charge shall be given in writing, duly certified, filed, etc., in felony cases, and where the court, over the objections of the defendant, as the jury was retiring addressed them orally not to discuss the fact of defendant's failure to testify, and not to arrive at their verdict by lottery or chance, the same was reversible error.

**3.—Same—Charge of Court—Statutes Construed—Rule Stated.**

The statute provides that no charge shall be given the jury after the argument begins, unless one of the three circumstances occur, towit, improper argument, request by the jury, or after additional testimony has been given. Following Abrigo v. State, 77 Texas Crim. Rep., 285, and other cases.

**4.—Same—Charge of Court—Lottery or Chance.**

Where, upon trial of theft of cattle, the court charged the jury orally not to find their verdict by lottery or chance, the same is error because it was not given in writing and, besides, conveyed the idea that the verdict would be unfavorable to the defendant, and the same was reversible error on that account. Following Hart v. State, 47 Texas Crim. Rep., 156.

**5.—Same—Original Taking—Charge of Court.**

Where, upon trial of theft of cattle, the evidence showed that the wife took up the animal without concert on part of defendant or his presence, this would not constitute him an original taker of the alleged property and should have been covered by a proper charge of the court.

Appeal from the District Court of San Jacinto. Tried below before the Hon. E. W. Love, Special Judge.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. V. Lea* and *J. M. Hansbro,* for appellant.—On question of court's charge on ownership: Spencer v. State, 34 Texas Crim. Rep., 65; Ledbetter v. State, 35 id., 195; Darnell v. State, 43 id., 86; Holloway v. State, 63 id., 503.

On question of oral charge: McKelvey v. State, 155 S. W. Rep., 932, and cases cited in the opinion.

*E. A. Berry,* Assistant Attorney General, for the State.—On question of insufficient bills of exception: Howard v. State, 143 S. W. Rep., 178; Melton v. State, 63 Texas Crim. Rep., 573; Holmes v. State, 150 S. W. Rep., 926.

DAVIDSON, Presiding Judge.—Appellant was convicted of cattle theft, his punishment being assessed at two years confinement in the penitentiary.

The State's contention is that Reese, the alleged owner, owned a calf, which he branded and turned out with a bell appended to its neck. He had not seen the calf for three or four years. Some miles away a similar calf was found in the range. It ran in the range for some time, maybe two or three years, or longer. Appellant sold the animal. There was claimed to be a brand upon the animal given by Reese. After the animal was sold this brand was examined by several parties. What the brand was is very indefinite. The testimony of those who examined the brand, except one, was to the effect that it could not be made out. Mr. Kuykendall testified he examined it and run his finger over it and came to the conclusion that the brand was F R, the brand claimed by the alleged owner, Reese. Appellant's testimony shows that the animal belonged to himself and family, or rather that it belonged to his boys. The mark on the animal was their mark. In regard to the mark there is no dispute. It is claimed, however, by the State that the animal did not belong to appellant or any of his family. The wife of appellant testified she raised the calf, and that it disappeared and was gone two or three years or longer when it returned. She recognized the animal and claimed it and turned it into their lot or enclosure, and was assisted in doing so by two gentlemen whose names were Hoot and Finch. They did not succeed in having these two witnesses present; however, they had attended court at previous terms. The appellant's wife testified positively to the identity of the animal, and that she knew it and raised it; that the mother died when it was a calf and she gave it to one of her boys and they had marked it. The mark given by her son and known to be his was on the ears of the animal. There is some discrepancy in the evidence as to what the mark of Reese was. The wife of appellant was not contradicted as to the fact that she took up the animal and put it in their enclosure, and within a short time after this was done appellant sold the animal to Tom Banks. There came up a conversation between the witness Kuykendall and appellant about this animal, and this conversation grew out of the fact that the matter had gotten under investigation, and appellant remarked, among other things, to the witness that he did not know whether the animal belonged to them or not; that his wife said it did. The witness Kuykendall was a State's witness, and this was elicited by the State in his examination in chief.

The court charged the jury with reference to this question of ownership and title, that if they should believe from the evidence that said one head of cattle was the property of Joe Winfrey or one of his children at the time of the taking as charged in the indictment, they should acquit. The bill of exceptions recites that appellant excepted to the charge of the court, the language being too general, and in this connection asked the court to charge the jury that if they should believe

this animal to be the property of appellant or one of his family, or there was a reasonable doubt of it, they should acquit. This charge was refused. We are of opinion it should have been given.' There is some question raised by the State that the exception to the court's charge was not sufficient. The language of the bill is as follows: ". . . after the court had prepared and submitted his charge to counsel for inspection and objections thereto, if any, the defendant objected and excepted to said charge and requested the court to give and charge the jury as follows:

"Gentlemen of the Jury: You are further charged that if you believe from the evidence that said one head of cattle was the property of the said Joe Winfrey or one of his family at the time of the taking as charged in the indictment, you will acquit the defendant and say by your verdict, 'not guilty,' or if you believe from the evidence that at the time said animal was sold to Tom Banks that the defendant, Joe Winfrey, from the statement of his wife, believed the said animal to be the property of himself or one of the family and acting on said belief sold said animal, you will find him not guilty, although you may believe that said animal was not the property of said Joe Winfrey or any of his family."

The writer is of opinion that this sufficiently called the attention of the court to the charge given by the court, in view of the language employed in the charge of the court being practically repeated, and the additional clause of the charge in the alternative, that if appellant believed the animal belonged to some member of his family they should acquit. The object and purpose of giving the charge to counsel for inspection and objection, if any to be desired, is that the attention of the court may be directed to any error in the charge as given, viewed from the standpoint of the criticism. If the court is sufficiently informed of this to understand the error pointed out, or claimed to exist, and refuses then to correct it, the writer is of opinion that this is sufficient basis for the accused to take advantage of the refusal to correct the charge as claimed. The charge should have been given as requested.

Another bill of exceptions recites that after the written charge had been submitted to the jury, and after argument of counsel had been concluded by the State and defendant, and without any request from either the State or defendant, and against the wishes of the defendant, as the jury was retiring or leaving the jury box the court addressed them verbally as follows: "Gentlemen: You will not discuss the fact that Mr. Winfrey did not take the stand in this case, as this is the right accorded him by law; and you will not arrive at your verdict by lottery or chance." Objection was urged at the time, as it was in the motion for new trial. The motion for new trial is supported by the affidavit of J. H. Hansbro that these matters occurred as stated. This is also sustained by the statement of the trial judge that the matters occurred as stated. The bill of exceptions is also approved. We think this con-

stitutes reversible error. The statute, article 735, C. C. P., requires that the charge shall be given in writing, definitely setting forth the law applicable to the case. Article 738, C. C. P., provides that the charge shall be certified by the judge and filed among the papers of the case, and shall constitute a part of the record. Article 740 reads as follows: "No verbal charge shall be given in any case whatever, except in cases of misdemeanor, and then only by consent of the parties." The decisions all are to the effect that in felony cases the charge must be in writing. A great number of these cases is found listed on page 500, Vernon's Ann. C. C. P., in note under Article 740. Article 737a, C. C. P., provides that after the judge shall have received the objections to his main charge, together with any special charges offered, he may make such changes in his main charge as he may deem proper, and the defendant or his counsel shall have the opportunity to present their objections thereto and in the same manner as is provided in article 735, and thereupon the judge shall read his charge to the jury as finally written, together with any special charges given. After the argument begins no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury, or unless the judge shall in his discretion, permit the introduction of other testimony, and in the event of such further charge the defendant or his counsel shall have the right to present objections in the same manner as is prescribed in article 735. Provided, that the failure of the court to give the defendant or his counsel a reasonable time to examine the charge and specify the ground of objection shall be subject to review either in the trial court or in the appellate court. It will be observed under this record, that when the main charge was handed counsel, in a general way they excepted and asked special instructions covering one feature of the case which has been already mentioned, and which the court did not give, nor did he correct his charge to meet that objection. The verbal charge given as the jury was retiring was not presented to counsel for appellant, and they had no opportunity of inspecting it. It was not written, but given verbally as the jury was retiring. The statute provides that no charge shall be given the jury unless one of the three circumstances mentioned in the statute occurs: improper argument, or request by the jury, or after additional testimony has been given. The verbal charge given by the court was not within any of these exceptions, nor did the appellant or his counsel have an opportunity to file exceptions to it, and the charge given was not in writing but verbal. We are of opinion that the question was settled favorably to appellant's contention in Abrigo v. State, 77 Texas Crim. Rep., 285, and Hart v. State, 47 Texas Crim. Rep., 156. As before stated, the exception was reserved at the time of the verbal charge, and it was also brought forward in the motion for new trial, and that the facts occurred as stated in the motion is shown by the affidavit of Mr. Hansbro in the motion for new trial, which is certified

by the trial judge to be correct. Judge Prendergast, in rendering the opinion in the Abrigo case, supra, said:

"Article 737a, as added by said Act, expressly provides that the failure of the court to give the defendant a reasonable time to do this (examine the charge) gives him the right, in effect, to make his objections for the first time in his motion for new trial. Proper complaint was made of this failure of the trial judge in the lower court in appellant's sworn motion for a new trial. So that under the circumstances, and the statute, appellant has properly raised and preserved this question."

Had the court given the charge in writing, and at the proper time, there is one defect in it to which attention might be called. In charging the jury not to find their verdict by lottery or chance, the idea is conveyed that the verdict would be unfavorable to the defendant, as shown by the authorities. Hart v. State, 47 Texas Crim. Rep., 156. Where a charge is given cautioning the jury not to find their verdict by lot, the jury should be admonished that they must first ascertain the fact that defendant is guilty. In other words, that the jury should be cautioned that if they should find the defendant guilty, then they should not decide his punishment by lottery or chance. For these errors we think the judgment should be reversed. Both phases of the verbal charge as given is error.

There is another question that is raised, and the objections, if any, to it are rather remote. This matter is mentioned so that upon another trial this phase of the testimony will be covered by the court's charge. It is this: The wife's testimony shows clearly, and is uncontradicted, that she took up the animal and put it in the enclosure. The evidence rather excludes the fact that appellant was present, or had anything to do with the original taking. This occurred about a week or more before appellant sold the animal to Tom Banks. If the wife took up the animal without concert on the part of appellant, and he was not present and not connected with the original taking, conceding the animal to be the property of Reese and not owned by appellant or his family, he would not be a principal. In order to constitute a principal the accused must be instrumental as an original taker. The fact that the wife took the animal and put it in their enclosure in appellant's absence would not constitute him an original taker under the facts contained in this record. If he subsequently found that his wife had taken the animal up, and he sold it, and his part of the transaction was fraudulent, that is, he knew the property to be stolen at the time he took it, it might constitute him a receiver. This is a very important fact in the case as we understand it, because the State introduced his explanation or statement that his wife told him the animal was their property, and that he himself did not know; his wife took up the animal, and taking the two statements together we have two propositions: first, if appellant believed it was his or belonged to his family and he sold it, he would not be guilty of anything, but if he did not so believe, as con-

tended by the State, and sold it and did not participate in the original taking, he would not be guilty under the indictment. This matter is mentioned so that upon another trial the law with respect to this phase of the case should be properly given in charge.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*